# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1681

_____

Abdikadir Abdillahi Guled,                    *
also known as Mohamed Ali Jamal,              *
also known as Yusuf Abdilahi Guled,           *
also known as Mukhtar Fahiyeh,                *
also known as Abdi Abuf Guled,                *
also known as Guled Abdul Ali, also           *
known as Abdisalan Mohamed Gure,              *
also known as Jamal Ali Abdul,                *
                                              *
            Petitioner,                       *
                                              *
      v.                                      *
                                              *
Michael B. Mukasey,                           *
                                              *
            Respondent.                       *


_____

No. 07-2339

_____

Abdikadir Abdillahi Guled,                    *
                                              *
            Petitioner,                       *
                                              *
      v.                                      *
                                              *
Michael B. Mukasey,                           *
                                              *
            Respondent.                       *

Petition for Review of an
Order of the Board of
Immigration Appeals.

_____

Submitted: January 18, 2008
Filed: January 31, 2008 **(Corrected 2/7/08)**
_____

Before BYE, BEAM, and GRUENDER, Circuit Judges.
_____

BYE, Circuit Judge.

Abdikadir Guled seeks review of a final order of removal issued by the Board of Immigration Appeals (BIA) affirming the Immigration Judge's (IJ) decision finding him removable and denying his applications for cancellation of removal, asylum and related relief. He also appeals the denial of his motion to reopen and reconsider. After careful review, we deny Guled's petition.

## I. Background

On or about September 30, 1991, Abdikadir Guled, a native of Somalia and citizen of Ethiopia,[1] entered the United States at the age of eleven as a refugee. He subsequently adjusted his status to that of a lawful permanent resident on or about October 20, 1992. Guled, currently twenty-seven years old, entered into a cultural, but not legal, marriage with Yasmin Mohamed in 1999. Mohamed testified she received asylum in 1998. The couple have two children together.

---

[1]The IJ found him to be a native and citizen of Somalia. The BIA found him to be a citizen of Ethiopia, like his mother.

-2-

## A. Proceedings Before the IJ

The Department of Homeland Security (DHS) commenced removal proceedings against Guled on August 28, 2003.  DHS charged him as being removable pursuant to Immigration and Nationality Act (INA) Section 237 (a)(2)(A)(ii), 8 U.S.C. § 1227(a)(2)(A)(ii), which allows the removal of an "alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct," and INA Section 237(a)(2)(E)(i), 8 U.S.C. § 1227(a)(2)(E)(i), which allows the removal of an "alien who at any time after admission is convicted of a crime of domestic violence."[2]  The IJ noted Guled initially admitted all of the allegations in the Notice to Appear and conceded the second charge of removability.   Upon changing attorneys, he later denied both charges of removability and also denied allegation six, which alleged he was a citizen of Ethiopia – the country in which his mother was born and raised.

The IJ did not sustain the first charge of removal, finding a conviction for resisting a police officer is not a crime of moral turpitude.  The IJ did sustain the second charge of removal, based on Guled's conviction for a crime of domestic violence.  He declined to designate a country for removal, and the IJ designated Ethiopia, or alternatively Somalia.

Guled originally applied for asylum on March 10, 2005, and submitted a second application on October 19, 2005.  He also applied for withholding of removal under INA Section 241(b)(3), 8 U.S.C. § 1231(b)(3), for relief under Article III of the Convention Against Torture, and for cancellation of removal for permanent residents.

---

[2]Guled was convicted on October 20, 2000, of battery against his wife in California and given three years of probation.  He was convicted on April 2, 2001, of resisting a police officer, also in California.

Guled claimed he suffered and fears persecution in Somalia because he allegedly belongs to a despised minority clan, the Madhiban clan. The IJ made an adverse credibility finding regarding his clan membership because of contradictions in the record. He claimed to be from the Madhiban clan in Somalia, although the asylum applications of his parents indicate they are from the Darod clan, and Guled's original application listed him as a member of the Darod clan. Testimony from police officer Brudenell, whom DHS called as a witness, revealed relatives of Guled stated in an unrelated investigation the family was Darod. The IJ concluded the evidence failed to establish Guled's membership in the Madhiban clan and failed to show persecution of the Darod clan.

Regarding Brudenell's testimony, Guled points out the local rules required DHS to file and provide him a witness list no later than ten calendar days prior to the final hearing. DHS violated this rule, and he properly objected on the ground he had not been given time and opportunity to prepare for cross-examination of witness Brudenell. The IJ noted Guled's objection but allowed Brudenell to testify. Witness Brudenell testified to Guled's membership in the Somali Crips street gang and stated he is viewed as a leader in the gang. She testified an album of photographs found in Guled's car depicted individuals throwing gang signs and wearing blue – the Crips' color. At least one photograph pictured him with a person carrying a very dangerous firearm. He did not request a continuance.

The IJ also found implausible Guled and Mohamed's account of his domestic violence arrests and convictions. Guled claimed he had never hit his wife and only pled guilty to assault in California because of advice from his public defender. He explained Mohamed had him arrested for domestic violence because she thought he was cheating. He also testified Mohamed was beaten badly by two women in February 2006, but told the police he was responsible because she was mad at him.

-4-

Mohamed first claimed Guled had never been arrested, the police had never come to their home, and he was never charged with domestic assault. After being shown a page from Guled's chronological criminal history, she admitted to calling the police in October of 2000, and had him arrested because she was feeling jealous and also because of problems with his brother. On cross-examination, she stated again Guled had never been arrested and had never been to jail. In fact, he does have a voluminous arrest and conviction record. Mohamed later submitted a statement explaining she was on medication at the hearing and was confused about her testimony. The IJ found Mohamed and Guled's explanations of the various domestic assault charges brought against him to be implausible.

Addressing Guled's application for cancellation of removal, the IJ applied the factors set out in Matter of Marin, 16 I&N Dec. 581, 584-85 (BIA 1978). The judge considered his criminal record, describing it as "about the largest laundry list of arrests this Court has seen for an individual in a long time." He considered evidence indicating Guled had been involved in the Rough Tough Somali Crips gang. The IJ also considered the limited evidence of his good character, acknowledging the supportive testimony of his wife and mother, his significant family ties in the United States, and the hardship to he and his family should he be deported. The IJ found no other documented evidence of Guled's value and service to the community, no record of military service, a spotty employment history, and no proof of rehabilitation with his arrests continuing up through that year. The IJ concluded he was a danger and it was not in the best interests of the United States to allow him to remain in this country as a permanent resident. His application for cancellation of removal was denied.

Turning to Guled's application for asylum, the IJ determined he did not qualify as he could not credibly demonstrate being a refugee within the meaning of INA Section 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A), i.e. he could not demonstrate any past persecution or well-founded fear of future persecution on account of his race, religion, nationality, membership in a particular social group, or political opinion.

The judge found Guled's testimony as to his tribal affiliation incredible because it was inconsistent and concluded there was no clear evidence of his membership in the Madhiban clan or reason to fear persecution.[3]

Next, the IJ concluded Guled failed to meet the burden of proof for a grant of withholding of removal because he failed to meet the lower burden of proof for a grant of asylum. He could not prove it was more likely than not he would be persecuted upon return to Ethiopia or Somalia. As for the claim for protection pursuant to the Convention Against Torture, the IJ found the evidence did not establish any government of Ethiopia or Somalia would have reason to want to torture him. The IJ denied his applications for cancellation of removal, asylum and withholding of removal pursuant to sections 240A, 208(b), and 241(b)(3) of the INA, 8 U.S.C. §§ 1229b, 1158(b) and 1231(b)(3), respectively, and protection pursuant to Article III of the Convention Against Torture. The IJ ordered him removed to Ethiopia, or in the alternative, to Somalia.

## B. Proceedings Before the BIA

Guled appealed the decision to the BIA. He challenged the IJ's adverse credibility findings, challenged the propriety of allowing the testimony of witness Brudenell because DHS did not submit her name on a witness list, challenged the IJ's determination it was not in the interest of the United States to allow him to remain a permanent resident, and not having met his burden of proof with respect to claims for asylum and related relief.

On February 3, 2007, the BIA dismissed his appeal. It rejected Guled's challenge to witness Brudenell's testimony, noting he could have requested a

---

[3]We note the evidence presented by Guled regarding his fears of persecution and torture pertained to Somalia. There is no evidence of any fear of persecution or torture in Ethiopia, the proposed country of removal.

-6-

continuance and his failures to show prejudice. The BIA reviewed the IJ's findings of fact, including its credibility determinations, under a clearly erroneous standard. See 8 C.F.R. § 1003.1(d)(3). First, the BIA affirmed the IJ's denial of Guled's application for cancellation of removal as within the IJ's sound discretion. See Matter of Marin, 16 I&N Dec. 581, 584-85 (BIA 1978) (stating standard for discretion). It found the IJ properly considered Guled's criminal history, long arrest record, gang connections, lack of evidence of rehabilitation, and spotty employment history, as compared to his family ties in the United States, length of residence, and potential hardship to his family if he were removed and did not err in denying his application for cancellation of removal. Second, the BIA affirmed the IJ's denial of his asylum claim, finding the IJ's credibility finding on his clan membership and other reasoning was not erroneous. Third, the BIA affirmed the IJ's decision as to not qualifying for withholding of removal under section 241(b)(3) of the INA or under the Convention Against Torture because of failure to show a clear probability of persecution in Somalia or Ethiopia.

## C. Motion to Reopen and Reconsider

Guled filed a motion to reopen and reconsider, renewing his argument that the officer was improperly allowed to testify and also the BIA erred in holding he failed to demonstrate prejudice. The BIA rejected his claim about witness Brudenell's testimony, reiterating he elected not to file a motion for a continuance. The BIA concluded his explanation for the discrepancy as to his clan affiliation was not convincing. It noted the only support for his claim to be a member of the Madhiban clan was the testimony of his wife, his mother and himself and a letter from a Somali organization, which did not explain the basis for its belief he was Madhiban.

The BIA found Guled had not cited to any mistake of fact or law to support his motion and merely reiterated arguments from his previous appeal. It further concluded he had not provided any new or previously unavailable evidence in support

of his motion to reopen and reconsider. Since he did not meet the heavy burden required to warrant reopening proceedings before the IJ, the BIA denied his motion.

## II. Appeal of Final Order of Removal

Guled petitions this court for review of the BIA's final order of removal, which affirmed the IJ's decision finding him removable and denying his applications for cancellation of removal, asylum, withholding of removal, and relief under the Convention Against Torture. He argues: (1) legal errors committed by the IJ and BIA violated his due process rights; (2) the IJ misapplied the balancing test used to determine whether cancellation of removal is appropriate; (3) the IJ abused its discretion in denying his claim for asylum and in "failing to consider" his claims for withholding of removal and relief under Article III of the Convention Against Torture.

## A. Standard of Review

When the Court reviews a BIA determination regarding eligibility for asylum, withholding of removal, or relief under the Convention Against Torture, the substantial evidence standard is utilized. See Diallo v. Mukasey, 508 F.3d 451, 454 (8th Cir. 2007). Such is an "extremely deferential standard of review." Id. (citing Salkeld v. Gonzales, 420 F.3d 804, 809 (8th Cir. 2005)). The INA, as amended by the Illegal Immigration Reform and Immigration Responsibility Act, states the court of appeals is to decide the petition for review of a final order of removal "only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A). It also provides "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The Attorney General's discretionary decision not to grant asylum – delegated to the IJ, 8 C.F.R. § 1208.14(a) – is conclusive unless "manifestly contrary to the law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). The burden of proof is on the applicant to establish eligibility for relief, and the alien may

sustain this burden by his own testimony, if credible. 8 C.F.R. §§ 1208.13(a), 1208.16(b) & 1208.16(c)(2).

## B. Cancellation of Removal

Guled appeals the BIA's order denying his application for cancellation of removal, arguing misapplication of law and a violation of his due process rights. An alien may apply for relief in the form of cancellation of removal if he meets the requirements set out in 8 U.S.C. § 1229b(b). Once an alien has cleared the non-discretionary legal requirements for eligibility, the IJ makes a discretionary determination whether the alien merits the relief of cancellation of removal. 8 U.S.C. § 1229b(b). The decision to grant cancellation of removal is a discretionary act by the Attorney General which this Court may not review. 8 U.S.C. § 1252(a)(2)(B). We may review the non-discretionary determinations underlying such a decision, such as the predicate legal question whether the IJ properly applied the law to the facts in determining an individual's eligibility. Reyes-Vasquez v. Ashcroft, 395 F.3d 903, 906 (8th Cir. 2005). We may also review constitutional claims or questions of law. 8 U.S.C. § 1252(a)(2)(D).

It is undisputed Guled met the eligibility requirements set out in 8 U.S.C. § 1229b(b). He appeals the IJ's non-reviewable discretionary determination he did not merit relief. He argues his appeal of the denial of cancellation of removal is properly before this Court because he brings a constitutional claim, arguing the IJ deprived him of his Fifth Amendment right to due process by allowing a witness to testify without giving him proper notice. We do not have jurisdiction to review the denial of cancellation of removal on this basis.

Cancellation of removal is a discretionary remedy, roughly equivalent to executive clemency, over which the executive branch has unfettered discretion. INS v. Yang, 519 U.S. 26, 30 (1996). Because adjustment of status amounts to a power

to dispense mercy, an alien can have no constitutionally protected liberty interest in such speculative relief and cannot state a claim for a violation of due process rights. Etchu-Njang v. Gonzales, 403 F.3d 577, 585 (8th Cir. 2005) (citing Nativi-Gomez v. Ashcroft, 344 F.3d 805, 808 (8th Cir. 2003)). "The failure to receive discretionary adjustment-of-status relief does not constitute the deprivation of a constitutionally-protected liberty interest." Nativi-Gomez, 344 F.3d at 808. For this reason, Guled cannot state a claim for a violation of due process rights.

Guled further argues his appeal of the denial of cancellation of removal is properly before this Court because the IJ misapplied the legal standard when making its discretionary determination; he argues this is a reviewable question of law. He agrees the IJ and BIA each applied the appropriate standard, as outlined in Matter of Marin, 16 I&N Dec. at 584-85, but argues the IJ improperly weighed the factors in the proper balancing test. Despite his characterization of the appeal as a question of law, what he challenges is the discretionary conclusion of not meriting a favorable exercise of discretion. This Court does not have jurisdiction to review the denial of cancellation of removal on such a basis. 8 U.S.C. § 1252(a)(2)(B).

## C. Asylum

Guled also appeals the denial of his application for asylum. He first argues the IJ erred by discounting several critical parts of his testimony and asks this Court to determine the IJ did not have valid grounds on which to conclude he was not credible.

The IJ found the testimony relating to Guled's clan membership, which is the heart of his asylum claim, to be substantively inconsistent. Substantive inconsistencies on key issues of an asylum claim can support an adverse credibility finding. See Hong Zhang Cao v. Gonzales, 442 F.3d 657, 661 (8th Cir. 2006). Where an adverse credibility finding is at the heart of an alien's asylum claim, such credibility determination can be dispositive as to whether the alien merits asylum. See Sheikh

v. Gonzales, 427 F.3d 1077, 1080-81 (8th Cir. 2005); Jalloh v. Gonzales, 423 F.3d 894, 898-99 (8th Cir. 2005).

"[A]n IJ making a credibility determination must give reasons that are specific enough that a reviewing court can appreciate the reasoning behind the decision and cogent enough that a reasonable adjudicator would not be compelled to reach the contrary conclusion." Chen v. Mukasey, ___ F.3d ___, 2007 WL 4482184, at *3 (8th Cir. Dec. 26, 2007) (internal quotation omitted) (citing Singh v. Gonzales, 495 F.3d 553, 557-58 (8th Cir. 2007)). Our review of the record confirms the discrepancies described by the IJ are actually present and provide cogent reasons to conclude his testimony was not credible. As the IJ noted, he did not provide a "convincing explanation for the discrepancies" in the record regarding his clan membership. The evidence was not so strong that any reasonable factfinder would be compelled to conclude he belonged to the Madhiban clan and had a well-founded fear of persecution. We see no reason to disturb the IJ's adverse credibility determination.

Guled next argues the IJ erroneously concluded he was ineligible for asylum, withholding of removal, and relief under the Convention Against Torture. We disagree. The IJ found he did not qualify for asylum because he could not credibly demonstrate as to being a refugee within the meaning of Section 101(a)(42)(A) of the INA. Since substantial evidence on the record as a whole supports the IJ's findings he could not prove being a refugee and could not prove a well-founded fear of persecution, we cannot say the IJ's decision to deny his application for asylum was manifestly contrary to law or an abuse of discretion. See 8 U.S.C. § 1252(b)(4)(D).

D. Withholding of Removal

An application for asylum automatically includes a request for withholding of removal. 8 C.F.R. § 1208.3(b); see INS v. Stevic, 467 U.S. 407, 420 n.13 (1984). An alien may not be removed if the alien shows there is a clear probability his "life or

freedom would be threatened in [the alien's] country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The standard for withholding of removal is a clear probability of persecution, which is more rigorous than the well-founded fear standard for asylum. Rife v. Ashcroft, 374 F.3d 606, 613 (8th Cir. 2004); Wondmneh v. Ashcroft, 361 F.3d 1096, 1099 (8th Cir. 2004). Therefore, an alien who cannot meet the standard for asylum cannot meet the standard for establishing withholding of removal. Ngure, 367 F.3d at 992. Accordingly, having found Guled failed to meet the well-founded fear of persecution standard for asylum, we conclude the BIA did not err in concluding he could not meet the standard for withholding of removal.

### E. Convention Against Torture

An applicant seeking relief under the Convention Against Torture bears the burden of establishing "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2); Ngure, 367 F.3d at 992. Although the IJ's adverse credibility determination and adverse decisions on asylum and withholding of removal are not determinative of a Convention Against Torture claim, Guled has not met his burden. The record contains no evidence that would establish any government would have reason to torture him. For the reasons he failed to carry his burden for asylum and withholding of removal, he likewise fails to carry his burden for relief under the Convention Against Torture.

Guled argues the IJ erred by not independently analyzing his claim for relief under Article III of the Convention Against Torture. A separate analysis, however, is required only when there is evidence the alien may be tortured for reasons unrelated to his claims for asylum and withholding of removal. Alemu v. Gonzales, 403 F.3d 572, 576 (8th Cir. 2005). Guled does not point to any evidence in the record, nor have we found any, which indicates he may be tortured for reasons unrelated to his claims for asylum and withholding of removal. Thus, we conclude the BIA did not err.

III. Appeal of Motion to Reopen and Reconsider

Guled also appeals the BIA's denial of his motion to reopen and reconsider.

A. Standard of Review

We review the BIA's decision denying a motion to reopen and reconsider for an abuse of discretion. Habchy v. Gonzales, 471 F.3d 858, 861 (8th Cir. 2006). The BIA's discretion in deciding such motions is "broad," since motions to reopen are disfavored because they undermine the government's legitimate interest in finality, which is heightened in removal proceedings "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." INS v. Doherty, 502 U.S. 314, 323 (1992). The BIA abuses its discretion where it gives no rational explanation for its decision, departs from its established policies without explanation, relies on impermissible factors or legal error, or ignores or distorts the record evidence. See Habchy, 471 F.3d at 861-62; Miranda v. INS, 51 F.3d 767, 768-69 (8th Cir. 1995) (per curiam) (holding no abuse of discretion where findings were a "reasonable interpretation" of record and did not ignore or distort evidence).

B. Discussion

Guled argues it was an error of law for the BIA to rule he did not meet his burden to show the proceedings should be reopened. He submitted additional documentary evidence, which offered new material facts which were not available at the prior hearing, to show he was a member of the Madhiban clan. This evidence included affidavits from his family and a letter from a Somali organization supporting his claims. He explains this evidence was not previously available because he was not afforded an opportunity to supplement the record after the IJ and BIA determined the evidence he first offered was insufficient.

A motion to reopen must present "new facts that are material to the outcome of the proceeding and were neither available nor discoverable at the prior hearing." Fongwo v. Gonzales, 430 F.3d 944, 947 (citing 8 C.F.R. § 1003.23(b)(3)). Motions to reopen should only be granted if the new evidence presented "could not by the exercise of due diligence have been discovered earlier." Fongwo, 430 F.3d at 947 (quoting Krougliak v. INS, 289 F.3d 457, 460 (7th Cir. 2002)) (finding petitioner's failure to provide certain evidence at the prior hearing because of his attorney's advice did not render the evidence new, unavailable, and undiscoverable). The law expects the applicant will present the strongest evidence at the outset and does not give him another chance to bolster the record with evidence available earlier, but which he decided to hold back. See Hailemichael v. Gonzales, 454 F.3d 878, 883-84 (8th Cir. 2006) (stating "evidence that could have been gathered before the initial hearing does not meet the regulation's requirement that a motion to reopen be supported with evidence that was 'not available and could not have been discovered or presented at the former hearing.'") (quoting 8 C.F.R. § 1003.23(b)(3)); Eta-Ndu v. Gonzales, 411 F.3d 977, 987 (8th Cir. 2005) (affirming BIA's denial of motion to reopen because petitioner did not present new evidence and rejecting petitioner's explanation that he did not present the "new" evidence earlier because he did not realize the current evidence was insufficient until the IJ issued his decision). Guled's additional evidence did not meet the regulation's requirement because it was available to him earlier and could have been presented at the initial hearing. The BIA did not abuse its discretion when it ruled he had not presented any new material evidence to warrant reopening the proceedings.

## IV. Conclusion

We find the BIA's explanation for its decision to be rational and in accordance with established policy. We find its interpretation of the record to be reasonable and find no legal error in its reasoning or conclusions. We therefore conclude the BIA did not abuse its discretion in denying Guled's motion to reopen and reconsider.

-14-

For the foregoing reasons, we deny Guled's petition for review.

_____